**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 24-313 (JDB)** |
| | ) | |
| **JACK CHAMBERS** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT JACK CHAMBER'S**
**MEMORANDUM IN AID OF SENTENCING**

### I.    Introduction

Mr. Chambers will be before the Court for sentencing after having accepted responsibility and pleaded guilty for his actions at the Capitol building on January 6, 2021, in violation of two petty misdemeanors, 40 U.S.C. § 5104(e)(2)(D) and (G). He is remorseful for his actions, regrets his conduct, and is prepared to accept responsibility for those actions.

Mr. Chambers respectfully requests that the Court impose a probationary sentence with appropriate conditions, along with the $500 restitution obligation. Such a sentence is sufficient but not greater than necessary to meet the goals of sentencing, as required by 18 U.S.C.§ 3553(a) and is consistent with other sentences imposed by this Court on similar defendants. It is also consistent with the recommendation of the Probation Office.

## II.    Procedural History

In July 2023, Mr. Chambers voluntarily met with FBI agents prior to any arrest in this case. He confirmed his presence at the Capitol on January 6, 2021, and provided details about his travel to the rally and his participation in the events that ensured at the Capitol building. He advised how he got to the rally and who he travelled with as well as where he slept the night before. He identified himself in photographs and videos taken at the Capitol. He admitted that he foolishly entered the Capitol and apologized for that action. He agreed to cooperate with further interviews as necessary.

Nearly a year later, on April 11, 2024, Mr. Chambers was arrested in Ohio pursuant to a criminal complaint charging him with misdemeanors in violation of 18 U.S.C. § 1752 (a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). He appeared first in Ohio and then via video for his initial appearance in Magistrate Court in this District on April 25, 2024. The government did not seek pretrial detention. He was released on conditions and has fully complied with those conditions for approximately 6 months.

Very early on in the case, Mr. Chambers expressed a desire to accept responsibility and enter a guilty plea. His plea was delayed slightly because of a change in counsel not precipitated by Mr. Chambers. On July 3, 2024, a four-count information was filed and on July 25, 2024, Mr. Chambers entered a guilty plea to Counts three and four of the criminal information charging him with violations of

40 U.S.C. § 5104(e)(2)(D) and (G), both petty misdemeanors. He has continued to be in full compliance with all conditions of release.

### III.    Application of the Sentencing Factors

### A. Mr. Chambers History and Characteristics Demonstrate that a Probationary Sentence is Appropriate

Mr. Chambers is a young man – he was just 21 years old on January 6, 2021. He is single and has no children. He was born in Minnesota but raised primarily in Ohio in a middle-class family. He is close to his family and lives in a modest apartment with another individual not far from his parents. He remains affiliated with and active in his family church. While he has a minor traffic offense (*not* a DUI), he has no prior criminal history.

He started his college career in Ohio, first studying chemistry and then changing schools and his field to study cyber security. Because of his arrest, he has put his college education on pause while this case is pending. In the meantime, he is working full-time for his mother's business – a window company franchise. He hopes, once he has put this case behind him, that he can return to college, get his degree, and pursue a career in his chosen field.

Mr. Chambers is not active on social media and has not posted about conspiracy theories or alleged election fraud either before January 6 or since January 6. While he has a positive cash flow, that will be no longer be the case when he starts paying for college again. He will be able to pay his special assessment and restitution, but a fine would likely prevent him from returning to school as promptly as he wants to do.

### B. The Nature and Circumstances of the Offense Demonstrate that a Probationary Sentence is Appropriate

Mr. Chambers is not associated with any extremist groups. A friend invited him to attend the rally and he did. They drove to D.C., spending the night in the car. He planned to attend the rally but did not anticipate going to the Capitol building, and he certainly never imagined that he would be illegally entering the building.

When he arrived at the Ellipse for the Trump rally on January 6th, he wore regular civilian clothing. He did not bring weapons of any kind – makeshift or actual. While at the rally, he and his friend heard Trump encouraging the crowd to walk to the Capitol and they decided to join.  At this point, he still did not anticipate entering the Capitol building.  He viewed the march to the Capitol as an extension of the rally.  He was not part of the initial breaches of Capitol grounds, nor did he arrive early enough to witness the barricades being removed. However, he did enter the building along with the crowd. He entered the Capitol Building at approximately 2:53 p.m. through the Senate Parliamentarian Door after it was breached by others. He left the building at 3:06 p.m. Thus, he was in the building for only approximately 13 minutes.

Mr. Chambers knows that his actions in entering the Capitol building were inexcusable, and he takes full responsibility for those actions. He understands the seriousness of his conduct and how it contributed to the chaos and destruction of that day. Any suggestion that he is unremorseful is uniformed or disingenuous. In this, just like nearly every case Counsel has had over the past 24 years, Counsel has

advised her client not to make statements about the offense to the Probation Office. It is a longstanding FPD practice. That does not mean he is not remorseful. He expressed that remorse upon his arrest and has done nothing in the intervening time to suggest otherwise. Attributing someone else's lack of remorse to him is unfair and misplaced. And, there are other considerations that support a non-custodial sentence.

First, Mr. Chambers did not condone nor participate in any violence. After arriving on Capitol grounds, he followed the **cr**owd into the building. He was in the building for about 13 minutes. He ultimately left peacefully and without incident.

Mr. Chambers did not personally engage in or encourage violent or destructive behavior.  The government may suggest that the lack of violence and destruction of property is not a mitigating factor in misdemeanor cases because, had this conduct been present, he would have been charged with felony offenses. However, this distinction is important because there have been misdemeanor cases where defendants did display far more assaultive and/or aggressive behavior. Such was not the case here.

When Mr. Chambers entered the Capitol building, the door had already been breached. He recognizes that the officers were overwhelmed by the crowds and had no choice but to stand back. Reflecting on the day, Mr. Chambers cannot really describe what he was thinking as he followed the crowd through open doors into the building, but he did not set out to "storm the capitol" or to interfere with the certification of the vote, although he recognizes that this was the result.

Mr. Chambers understands that his mere presence added to a truly disruptive and chaotic day, and that by being a part of the crowd and by illegally entering the U.S. Capitol, he is guilty of the charges he faces. He is ashamed to have played any part in this at all, and is remorseful for his participation, regardless of the level. However, there are a wide range of behaviors that fall under the definition of "disruptive" and "disorderly." Mr. Chambers actions are at the lowest end of that spectrum. And, as this Court is aware, the same misdemeanor charges and plea offers have been given to those who were far more blatantly disruptive and disorderly, participating in behaviors such as yelling obscenities at officers, entering offices or conference rooms, smoking inside the building, littering, pounding on doors, etc.

It is also important to note that after exiting the building, Mr. Chambers left Capitol grounds.  He did not brag about his actions and did not boast about his participation on social media even in the immediate aftermath of the events.  And, as noted above, he met voluntarily with the FBI in July 2023, a year before his arrest. At that time, he admitted entering the Capitol, identified himself in photos, and acknowledged his phone number as a number that was identified in the geofence warrant. He agreed to meet further with the FBI at their request, indicating, according to the FBI agent who wrote the 302, "he wanted to be cooperative and was apologetic." He was not arrested until nearly a year later. At the conclusion of the interview, the FBI noted that he was "not being nominated for watchlisting with the TSDB at this time due to CHAMBERS age, background and

information learned from CHAMBERS interview." In other words, he was not seen as a threat.

### C. **A Probation Sentence would be Sufficient to Reflect the Seriousness of the Offense, Provide Just Punishment and Achieve Deterrence**

In many other January 6 cases, the government has identified nine relevant sentencing factors:

> While looking at the defendant's individual conduct, we must assess such conduct on a spectrum and with an eye towards its larger consequences. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.[1]

---

[1] *See, e.g., United States v. Buckler*, 1:22-CR-162(TNM), ECF No. 26, Gov. Sentencing Memo at 26 (requesting 30 days of incarceration for defendant who entered the Capitol twice, the first time by climbing through a broken window and who entered a Senator's private office and was captured on video in the office while another individual smoked marijuana). Mr. Buckler was sentenced to probation with a condition of home incarceration. Nearly identical wording and the same list of factors are found in other January 6th Government Sentencing Memorandums, including but not limited to *United States v. Bennett*, 1:21-CR-227-JEB, (ECF 24); *United States v. Grace*, 1:21-CR-492-RDM (ECF 35); *United States v. Dresch*, 1:21-CR-71-ABJ (ECF 33); *United States v. Ehrke*, 1:21-CR-97-PLF (ECF 20); *USA v. Wrigley*, 1:21-CR-42-ABJ (ECF 35); *United States v. Reimler*, 1:21-CR-239-RDM (ECF 31); *United States v. Brodnax,* 1:21-CR-350-PLF (ECF 41); *United States v. Sorvisto*, 1:21-CR-320-ABJ (ECF 28); *United States v. Loftus*, 1:21-CR-81-DLF (ECF 29); *United States v. Juran*, 1:21-CR-419-TFH (ECF 21); *United States v. Camper*, 1:21-CR-325-CKK (ECF 30).

Application of the government's factors demonstrate that probation is appropriate for Mr. Chambers. As set forth herein and in the PSR, Mr. Chambers peacefully traveled to Washington, D.C. to participate in a rally hosted by the President. He did not travel with an extremist or military group or bring any weapons. He entered through the doors that had already been breached. He did not engage in violence or destruction. He was inside for 13 minutes. He did not purposefully delete any photos or videos from his phones. He cooperated fully with law enforcement. He pleaded guilty early and without reservation and has expressed remorse as early as upon his arrest. Of course, the government's proposed factors are just suggestions. However, if the Court accepts the government's invitation to apply these factors, these factors, as well as the 3553(a) factors discussed herein and a comparison to similar cases, support a sentence of probation.

The arrest in this case and the attendant publicity as well as the anxiety over the prospect of losing employment and professional credibility, as well as the strain it has put on his personal relationships is more than sufficient to deter Mr. Chambers from ever again having a lapse of judgment like he had on January 6. This assertion is supported by U.S. Sentencing Commission Data which found that offenders with zero criminal history points have a rate of reconviction of between 3 and 5 percent.[2] Of course, these numbers likely do not reflect offenders convicted of

---

[2] *See* Ruben Castillo et al., Recidivism and the "First Offender" 13 (2004), available at https://www.ussc.gov/research/research-publications/recidivism-and-first-offender.

petty misdemeanors, which further suggests that the chance that Mr. Chambers would ever reoffend is next to nil.

With respect to general deterrence, the government's widespread prosecution of nearly everyone who entered the Capitol grounds should serve as a deterrent to others in future elections. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects."[3] In short, the most effective deterrent is the certainty of punishment, rather than its length.[4] One would certainly hope and expect that general deterrence has been met by the government's dogged pursuit of everyone who participated in the January 6 insurrection.

### D. A Probation Sentence Would Avoid Unwarranted Disparities

#### 1. The Majority of January 6th Misdemeanor Defendants Receive Probationary Sentences

In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case. Sentences imposed in these cases vary from very short terms of probation to periods of incarceration, and everything in between. While Mr. Chambers conduct was serious, probation remains an appropriate resolution and would not result in

---

[3] Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 28 (2006), available at https://scholarship.law.umn.edu/faculty_articles/495.

[4] *See, e.g.,* The Growth of Incarceration in the United States 131 (Jeremy Travis et al. eds., 2014); Five Things About Deterrence, Nat'l Inst. of Just., https://nij.ojp.gov/topics/articles/five-things-about-deterrence.

disparity.[5] The majority of individuals charged with misdemeanors arising out of January 6 have received probation. Indeed, a review of the chart the government compiles showing sentences to date in the January 6 cases, shows that **well over half of the individuals charged with misdemeanors have received no term of incarceration**. District of Columbia | Capitol Breach Cases | United States Department of Justice.

## 2. Other January 6th Cases for Consideration

While no two cases or two defendants are exactly alike, the defense has identified the following cases this Court has presided over to consider as

---

[5] *See e.g., United States v. Jonathan Sanders*, 1-21-CR-384 (CJN) (36 months of probation); *United States. v. Jennifer Parks*, 1:21-CR-363 (CJN) (24 months of probation); *United States v. Brian Sizer*, 1-21-CR-621 (CRC) (12 months of probation); *United States v. Gary Edwards,* 1:21-CR-366 (JEB) (12 months of probation); *United States v. Jordan Hernandez*, 21-CR-272 (TJK), (24 months of probation); *United States v. Anna Morgan Lloyd*, 21-cr-164 (RCL) (36 months of probation); *United States v. Jessica and Joshua Bustle*, 21-Cr-238 (TFH) (probation with home confinement); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (probation with home confinement); *United States v. Danielle Doyle*, 21-cr-0234 (TNM) (2 months of probation); *United States v. Valerie Ehrke*, 21-cr-97 (PLF) (36 months of probation); *United States v. Eliel Rosa*, 21-cr-068 (TNM) (12 months of probation); *United States v. Jacob Hiles*, 21-cr-155 (ABJ) (24 months of probation); *United States v. Sean Cordon*, 21-cr-269 (TNM) (2 months of probation); *United States v. John Wilkerson, IV*, Crim. No. 21-302 (CRC)(36 months of probation); *United States v. Andrew Wrigley*, Crim. No. 21-042 (ABJ) (18 months of probation); *United States v. Andrew Hatley*, Crim. No. 21-098 (TFH) (36 months of probation); *United States v. Rachael Pert*, Crim. No. 21-139 (TNM)(24 months of probation); *United States v. Jeffrey Witcher*, Crim. No. 21-235 (RC)(12 months of probation); *United States v. Brandon Nelson* and *Abram Markofski*, Crim. No. 21-344 (JDB) (24 months of probation); *United States v. Thomas Vinson and Lori Vinson*, 21-CR-55 (RBW) (probation); *United States v. Thomas Gallagher*, 21-Cr-41 (24 months of probation); *United States v. Douglas Wangler*, 21-cr 365 (DLF) (24 months of probation); *United States v. Bruce Harrison*, 21-cr-365 (DLF) (24 months of probation); *United States v. Brian Dula*, 24-cr-72 (RBW) (36 months of probation); *United States v. Joseph Hicks*, 23-cr-399 (JMC) (probation); *United States v. Judy Fraize*, 24-cr-267 (ACR) (12 months of probation; *United States v. Karen and Robert Jones*, 24-cr-110 (BAH) 36 months of probation; *United States v. John and Johnny Delbridge*, 24-cr-148 (CJN) (24 months of probation); *United States v. Dominic Jakubowski*, 24-cr-172 (APM) (24 months of probation); *United States v. David Howard*, 24-cr-47 (APM) 24 months of probation); *United States v. Amanda Mongelli*, 23-cr-390 (DLF) (24 months of probation).

comparators. Most significantly, this Court has sentenced nearly every January 6 defendant who pleaded guilty to the petty misdemeanors to probation. A comparison to those cases demonstrates that a sentence of probation is appropriate in this case too.

- *United States v. Brandon Nelson and Abram Markofski*, 21-CR-344 (JDB). Nelson and Markofski entered the Senate Wing door at 2:16, less than 5 minutes after the windows on either side of the door were smashed, remained in the building for well over an hour, ventured into the Crypt and Rotunda, and bragged about their activities afterwards. They remained outside on Capitol grounds for an hour-and-a-half after leaving the building. Like Mr. Chambers, both participated in a voluntary interview and quickly expressed a desire to accept responsibility. Like Mr. Chambers, neither had any criminal history. Unlike Mr. Chambers, their time in the building and on grounds was very extensive and they bragged about their actions while in the Capitol and in the immediate aftermath.[6] Like Mr. Chambers they accepted responsibility for their actions and cooperated fully. Unlike Mr. Chambers, both had military service, but as the Court noted in sentencing them, that cuts both ways.[7] The government requested 14 days of incarceration and this Court imposed a sentence of 24 months of probation on each defendant.[8]

---

[6] ECF 49 and 50, Government's Sentencing Memos
[7] ECF 62, Transcript of Sentencing
[8] ECF 58 and 60, Judgements

- *United States v. Thomas Fee*, 21-cr-133 (JDB). Fee entered through the Senate Wing Doors within a minute of the windows and doors being kicked in, went to the Crypt and then returned to the Senate Wing Doors, waving others in, left and reentered the building, remained in the building 40 minutes, and bragged to his friend during the event that he was "at the tip of the spear."[9] Mr. Fee was a former New York firefighter, not a 21 year old man like Mr. Chambers. Like Mr. Chambers, Mr. Fee did not post on social media and was contrite.[10] The government requested 30 days of incarceration and this Court imposed a sentence of 24 months of probation.[11]

- *United States v. Jody Tagaris*, 21-cr-368 (JDB). Tagaris entered the Capitol through a broken window near the Senate Wing Door several minutes after it was breached, remained in the building for approximately 20 minutes, posted a message on Facebook celebrating her actions, and entered a private room in the United States Capitol where she stayed for about 5 minutes until ordered to leave.[12] Unlike Mr. Chambers, according to the government, she did not express any remorse until her sentencing.[13] The government requested 30 days of incarceration and this Court imposed a sentence of 24 months of probation.[14]

---

[9] ECF 38, Government's Sentencing Memo
[10] ECF 47, Transcript of Sentencing
[11] ECF 43, Judgement
[12] ECF 20, Government's Sentencing Memo
[13] *Id.*
[14] ECF 25, Judgement

12

- *United States v. Jonas Buxton,* 21-cr-739 (JDB). Mr. Buxton entered the Capitol from the Senate Wing and went into the Crypt. He wore a gas mask and tactical vest, carried a flag, and spent 16 minutes in the Capitol Building, before exiting through the window.[15] He attempted to join the Three Percenters and Oath Keepers in the days preceding the rally.[16] These circumstances appear to be more egregious than those in Mr. Chambers' case The government requested 30 days of incarceration and this Court imposed a sentence of 18 months of probation.[17]

- *United States v. Melanie Lanham*, 22-cr-102-1 (JDB). Lanham walked through the West Plaza and observed police using tear gas against rioters and rioters climbing outdoor scaffolding. She then entered the Capitol building through the Upper West Side doors. She went to private areas of the Capitol – reaching a third-floor hallway adjacent to Speaker Pelosi's private office suite, where she posed in front of the Speaker's Office sign. Once outside, she posed disrespectfully in front of the front line of officers. She spent approximately 15 minutes in the building.[18] In her post-arrest interview, the government said she minimized her actions. Like Mr. Chambers, she had no criminal history and did not engage in violence. Unlike Mr. Chambers, she entered private areas of the Capitol. The government

---

[15] ECF 33, Government's Sentencing Memo
[16] *Id.*
[17] ECF 40, Judgement
[18] ECF 43, Government's Sentencing Memorandum

requested 30 days of incarceration and this Court imposed a sentence of 18 months of probation.[19]

- *United States v. Jordan Bonenberger*, 22-cr-102-2 (JDB). Bonenberger (codefendant to Lanham, above) entered the Capitol building after walking through the West Plaza. He entered through the Upper West Side doors within minutes after police retreated while alarms were blaring. He observed police with riot shields and saw tear gas being deployed. He went deep into the Capitol to a third-floor hallway adjacent to Speaker Pelosi's private office suite.[20]  He spent approximately 20 minutes inside the Capitol. The government requested 14 days of incarceration and this Court imposed a sentence of 18 months of probation.[21]

- *United States v. David Ball*, 23-cr-153 (JDB). Ball entered the Capitol through the Senate Wing Door minutes after it was breached, enthusiastically participated near the front of a large, hostile crowd confronting a small line of officers in the "Crypt" area of the Capitol. He also posted on social media downplaying his culpability.[22] He remained in the building for approximately 18 minutes. In the days after his guilty plea and before sentencing, he continued to downplay his culpability.[23] The

---

[19] ECF 48, Judgement
[20] ECF 60, Government's Sentencing Memo
[21] ECF 65, Judgement
[22] ECF 33, Government's Sentencing Memo
[23] *Id.*

government requested probation with 21 days of intermittent incarceration and this Court imposed a sentence of 24 months of probation.[24]

- *United States v. Yesenia Jaure and Jacob Hawkins*, 23-cr-264 (JDB). Jaure and Hawkins were at the front of the rioters attempting to gain access into the US Capitol building through the Rotunda Door at 2:25 p.m.  They were among the first to enter the building on the East side. In addition to traveling through the rotunda and always, they went into the House Speakers hallway. They were escorted out of that area but returned seven minutes later and entered House Speaker Pelosi's Staff Office.[25] They were in the building approximately 40 minutes. Like Chambers, they both gave voluntary interviews to the FBI before they were charged. Mr. Hawkins had some relatively minor criminal history.[26] The government requested 14 days of incarceration for each defendant and this Court imposed a sentence of 24 months of probation on each defendant.[27]

- *United States v. Stephen Ayres*, 21-cr-156 (JDB). Ayers pleaded guilty to the more serious Class A misdemeanor (1752(a)(2)). Unlike Mr. Chambers, Mr. Ayers posted incendiary remarks on social media before and after January 6, including comments that members of Congress, Vice President Mike Pence, and others had committed treason.[28] He was in the Capitol for approximately

---

[24] ECF 36, Judgement
[25] ECF 26, Government's Sentencing Memo
[26] *Id.*
[27] ECF 31, 33 Judgements
[28] ECF 61, Government's Sentencing Memo

10 minutes and on Capitol grounds for approximately one-and-one-half hours.[29] The government requested 60 days of incarceration. The Court imposed a sentence of 24 months of probation.[30]

- *United States v. Zachariah Boulton*, 23-cr-284 (JDB). Boulton pleaded guilty to the more serious Class A misdemeanor (1752(a)(1)). According to the government, after his actions on January 6, Boulton posted numerous TikTok videos advocating for political violence and minimizing the actions of the rioters. He also suggested on social media before January 6 that he would be "armed and ready." He approached the Capitol towards the scaffolding by the Inaugural Stage where chemical irritants were in the air and walked up the Upper West Terrace at 2:31 p.m. He entered the building at 2:39 p.m. He went down a hallway near the Old Senate Chamber and engaged in a prolonged standoff with rioters, repeatedly chanting "Fuck McConnell." He pushed and was pushed into the crowd that was pushing against the police line. He exited the building after approximately 15 minutes. After January 6, he deleted many of his posts, but the government obtained the videos through a search warrant.[31] Unlike Chambers, Boulton had criminal history, was not fully compliant with his release conditions, and repeatedly glorified political

---

[29] ECF 62, Defendant's Sentencing Memorandum.
[30] ECF 63, Judgement
[31] ECF 26, Government's Sentencing Memorandum

violence.[32] The government requested 90 days of incarceration and this Court imposed a sentence of 24 months of probation.[33]

- *United States v. Jason Curl*, 23-cr-253 (JDB). Curl repeatedly encouraged other rioters – yelling to move "Forward!" and into the building through the Senate Wing Door after noting the tear gas being used to try to stop the rioters; used his fists to hit the walls and his flagpole to hit the ground while yelling and cheering inside the Capitol. He spent 24 minutes inside the Capitol and almost two hours on Capitol Grounds. He showed no remorse.[34] In this post-Little case, the government requested 30 days of incarceration on one count and 24 months of probation on the other count, and this Court imposed a sentence of 24 months of probation on each count, concurrent.[35]

There have also been a few cases where this Court has found it appropriate to add a special condition of home confinement, but those cases have been for more egregious conduct than that of Mr. Chambers:

- *United States v. Samuel Montoya*, 21-cr-336 (JDB). Montoya spent 38 minutes inside the Capitol and created a 44-minute video of his time at the Capitol to be published on InfoWars. He entered the building from the Senate Wing door and went through the Crypt where he was part of a large mob that overran police, then to the Rotunda and the House Chamber Door where he

---

[32] *Id.*
[33] ECF 31, Judgement
[34] ECF 34, Government's Sentencing Memorandum
[35] ECF 37, Judgement

saw the crowd attempting to break in, and then to the Speaker's Lobby where he filmed the shooting of Ashli Babbit. He entered despite acknowledging on film that he saw the barricades, saw tear gas, and heard about rubber bullets being fired. He acknowledged on film that it was not a peaceful protest, and that the police officers were scared, and yet he continued. He entered the building at 2:18 and was escorted out by police at 2:58. Montoya demonstrated no remorse, instead capitalized on his participation in the riot in his unsuccessful political campaign for the House of Representatives.[36] The government requested 45 days of incarceration and this Court imposed a sentence of 36 months of probation with 120 days home confinement.[37]

- *United States v. Thaddis Johnson*, Jr., 22-cr-228 (JDB). Johnson entered the restricted perimeter, observed people breaking windows with flag poles and pushing against police shields and saw several people climbing up scaffolding and becoming aggressive. He also saw the police retreating after a large group of people breached a door on the Northwest Terrace. He then entered the Capitol though the Northwest side door shortly after its breach, stayed in the building for less than one minute, and left. He re-entered the same door, went into the Senate Parliamentarian's Office, and stayed for several minutes. Johnson then exited and went to the Senate Wing door, where he was present while rioters fought with police and breached the door for the second time. After exiting the building a second time, he jumped through a

---

[36] ECF 64, Government's Sentencing Memo
[37] ECF 69, Judgement

window adjacent to that door to enter the building a third time, stayed in the hallway for approximately five minutes, and then left for the third and final time.[38] So, unlike Mr. Chambers, Mr. Johnson entered the Capitol building on three separate occasions, filmed as other rioters engaged in a physical struggle with police to breach barriers, entered the Parliamentarian's Office while it was being ransacked, entered the Senate Wing Door through a broken window, and misrepresented his conduct on January 6th and his presence at the Capitol during multiple interviews with the FBI.[39] Unlike Chambers, Johnson also was an avid social media poster who engaged in trafficking of misinformation. He also had some difficulties on release.[40] The government requested 45 days of incarceration and this Court imposed a sentence of 24 months of probation with 60 days home detention.[41] Mr. Johnson's actions were much more egregious than those of Mr. Chambers.

And there have been a few cases where this Court imposed a short period of incarceration when faced with a misdemeanor conviction, but those cases provided much more stark facts.

- *United States v. David Ticas*, 21-cr-601 (JDB). Ticas brought his sixteen-year-old daughter inside the Capitol Building on January 6, even after witnessing police officers firing nonlethal munitions against the mob of rioters. He

---

[38] ECF 26, Government's Sentencing Memo
[39] *Id.*
[40] *Id.*
[41] ECF 36, Judgement

entered the Capitol through the Senate Wing Door while filming other rioters entering through smashed out windows right next to that door. He moved extensively throughout the Capitol Building with his daughter at his side and incited his fellow rioters by shouting that the police could not scare them by setting off the non-lethal munitions. Throughout the day he mocked and harassed police officers who were guarding the Capitol, told them they were on the wrong side, and asked them to reveal the location of lawmakers who might be hiding from the mob.  After leaving the Capitol on January 6, he repeatedly expressed pride in his participation in the riot, calling himself a "domestic terrorist. When he was arrested, he expressed no remorse for his conduct and attempted to justify his actions.[42] The government requested 3 months of incarceration and this Court imposed a sentence of 24 months of probation with 14 days of incarceration.[43] This is not a comparable case.

- *United States v. David Lesperance, James Cusick*, and *Casey Cusick,* 21-cr-575 (JDB). These three defendants were convicted of all 4 misdemeanors after a jury trial. The government sought sentences ranging from 7 to 9 months and this Court imposed a sentence of 10 days of incarceration on each defendant with 12 months of supervised release.[44] Each was in the building for approximately 15 minutes. None accepted responsibility for their actions and instead minimized their actions. Lesperance was elderly, C. Cusick had a

---

[42] ECF 34, Government's Sentencing Memorandum
[43] ECF 40, Judgement
[44] ECF 142, 144, and 146, Judgements

prior conviction for domestic violence, and all three celebrated their involvement in January 6. The defendants also testified falsely at trial.[45] These are not comparable cases.

- *United States v. John Nassif*, 21-cr-421 (JDB). Nassif entered the Capitol through the Rotunda Doors with broken glass after watching other rioters push past police officers and after repeatedly walking past obvious signs that the building and grounds were restricted. He led a chant of "Who's House? Our house!" outside the Rotunda Doors and told other rioters to "keep fighting." He moved into the Rotunda even while watching other rioters fighting with the police and remained there after the officers ordered him to leave. He made physical contact with police officers on several occasions as he moved through the Capitol building. He subsequently spread disinformation about the on social media and had statements stored on his mobile telephone urging violence against the government (e.g., "By Bullet or by ballot, restoration of the republic is coming.") Moreover, he testified falsely at trial and never expressed remorse for his criminal conduct on January 6.[46] After a bench trial and conviction on both Class A and petty misdemeanors, the government requested 21 months of incarceration and this Court imposed a sentence of 7 months of incarceration.[47] This is not a comparable case.

---

[45] ECF 129, 130, and 131, Government's Sentencing Memoranda
[46] ECF 81, Government's Sentencing Memorandum
[47] ECF 87, Judgement

- *United States v. Nathan Pelham* 23-cr-150 (JDB). While Pelham's actions on January 6 were not particularly notable, when police arrived to arrest him, he shot several rounds and a multi-day standoff ensued. He was charged with federal and state offenses in addition to the January 6 case. He remained dishonest throughout his interactions with law enforcement. He also had an extensive criminal history.[48] The government requested 6 months of incarceration and this Court imposed a sentence of time served (152 days).[49] This case is not comparable.

As noted in Footnote 5, every Judge in this District has found probation without home confinement to be appropriate in at least some January 6 misdemeanor cases. The government may point to other cases where periods of incarceration have been imposed.  The defense submits that those cases do not justify a sentence of incarceration for Mr. Chambers given his specific conduct, his contrition, and his history and characteristics.

### E.  A sentence of probation and incarceration if imposed would create disparity when compared to similarly situated defendants charged and convicted prior to the *Little* decision.

Mr. Chambers entered a guilty plea to the only offer the government tendered, that is, to two petty misdemeanor counts: one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. 5104(e)(2)(G), and one count of Disorderly Conduct in a Capitol Building, in

---

[48] ECF 22, Government's Sentencing Memorandum
[49] ECF 24, Judgement

violation of 40 U.S.C. 5104(e)(2)(D). Prior to the D.C. Circuit's opinion, *United States. v. Little, 78* F.4th 453 (D.C. Cir. 2023), which held that split sentences cannot be imposed for petty offenses, the government's standard plea offer for defendants similarly situated to Mr. Chambers was to a *single count* of Parading and Picketing. Post *Little*, the government has required defendants to plead guilty to two counts. That is because based on the *Little* decision, the government would be unable to request a sentence of both probation and incarceration for a single petty offense.

In *Little*, the D.C. Circuit agreed with the defense that a split sentence for a petty offense "conflicts with the statutory scheme" Congress laid out which made probation and imprisonment separate options for separate offenses. *Id*. In so holding, the D.C. Circuit was clear that a sentence of imprisonment and probation would "subvert the Sentencing Reform Act's general rule that probation is a standalone sentence, combinable only with a fine, not with imprisonment." *Id*. at 458.

Despite the D.C. Circuit's clear instruction that this type of sentence was not contemplated by Congress when it created the petty offense framework, the government has sought in many cases an end-run around the holding in *Little*. If the government does so in this case, the Court should reject the government's invitation to impose an enhanced punishment on Mr. Chambers not based on his culpability but based on the timing of the government's decision to charge him. The happenstance of when he was charged should not dictate his sentence.

A review of sentences this Court imposed prior to *Little* in similar cases in which defendants were equally or more culpable than Mr. Chambers (as cited above) demonstrates that a sentence of both incarceration and probation would result in disparate treatment.

Moreover, post *Little*, for the vast majority of cases of individuals in Mr. Chambers position, i.e., with 2 petty offenses, Judges have declined to impose two separate punishments for offenses that are virtually identical.[50] *See e.g.*, *United States v. Cameron Campanella*, 23-cr-231 (ACR) (12 months of probation on each count, concurrent); *United States v. David Tyner*, 23-cr-361-1 (RDM) (36 months probation with 60 days home detention on both counts, concurrent) *United States v. Christian Tyner*, 23-361-2 (RDM) (24 months of probation with 30 days home detention on both counts, concurrent); *United States v. Juan Rodriguez*, 23-cr-270 (ADM) (30 days incarceration on both counts, concurrent; no probation); *United States v. Nhi Ngoc Mai Le*, 23-cr-317 (TSC) (10 days incarceration on both counts, concurrent; no probation); *United States v. Thomas Pooler*, 24-cr-75 (TNM) (12 months of probation on each count, concurrent); *United States v. Nicholas Von Keudell*, 23-cr-221 (CRC) (24 months of probation on each count, concurrent); *United States v. Steven Hanna,* 23-cr-272 (TJK) (24 months of probation with 45 days home detention on each count, concurrent); *United States v. Robert Hanna,* 23-

---

[50] This section consists of all of the post-*Little* cases with the same two charges of conviction that are included on the government's table "Sentences Imposed in Cases Arising Out of the Events of January 6, 2021, located at https://www.justice.gov/usao-dc/media/1331746/dl?inline as of September 11, 2024. Because that chart contains errors, Counsel further confirmed the information by checking the judgements issued in each of the cases.

cr-272 (TJK) (24 months of probation with 45 days home detention on each count, concurrent); *United States v. David Smither,* 24-cr-15 (JMC) (12 months of probation on each count, concurrent); *United States v. Steven Barber,* 23-cr-409 (DLF) (24 months of probation on each count, concurrent); *United States v. Esvetlana Cramer,* 23-cr-414 (DLF) (24 months of probation on each count, concurrent); *United States v. Sarah Holmes,* 24-cr-90 (TNM) (12 months of probation on each count, concurrent); *United States v. Stephen Ondulich,* 23-cr-242 (APM) (36 months of probation with 45 days home detention on each count, concurrent); *United States v. Jason Curl,* 23-cr-253 (JDB) (24 months of probation on each count, concurrent); *United States v. Scott O'Brien,* 24-cr-206(TNM) (24 months of probation on each count, concurrent); *United States v. Kimberly Sylvester,* 24-cr-102 (JEB) (12 months of probation on each count, concurrent); *United States v. Daniel Valdez,* 24-cr-86 (DLF) (36 months of probation on each count, concurrent); *United States v. Robert Colello,* 24-cr-59 (JMC) (12 months of probation on each count, concurrent); *United States v. Ulises Wilkinson,* 23-cr-282 (JMC) (12 months of probation on each count, concurrent); *United States v. Miles Adkins,* 24-cr-273 (TNM) (24 months of probation with 12 days intermittent incarceration on each count, concurrent); *United States v. Tonya Bishop*, 23-cr-416 (TJK) (24 months probation on each count, concurrent); *United States v. Timothy Tedesco*, 24-cr-128 (BAH) (36 months of probation with 90 days home detention on each count, concurrent); *United States v. Marissa Bowling, 23-cr-425-01 (APM)* (24 months of probation, concurrent); *United States v. Dylan, 23-cr-425-02 (APM)* (24 months of

probation with 30 days home detention on each count, concurrent); *United States v. Curtis Pulaski*, 24-103 (TJK) (24 months of probation with 30 days home detention on each count, concurrent); *United States v. Benjamin Heffelfinger*, 24-cr-51 (RC) (24 months of probation with 60 days home detention, concurrent); *United States v. Amanda Mongelli,* 23-cr-390-2 (DLF) (24 months of probation on each count, concurrent); *United States v. Valerie Rushing,* 24-cr-86-1 (DLF) (24 months of probation on each count, concurrent); *United States v. Zylas Hamilton*, 24-cr-153 (RDM) (24 months of probation with 30 days home detention on each count, concurrent); *United States v. David Howard*, 24-cr-47 (APM) (24 months of probation with 30 days home detention on each count, concurrent); *United States v. Christopher Gutierrez,* 24-cr-184 (LLA) (36 months of probation with 60 days home detention on each count, concurrent); *United States v. Robert Dowell,* 24-cr-335 (TNM) (12 months of probation on each count, concurrent); *United States v. Giorgi Masmulashvili*, 24-cr-0165 (JMC) (12 months of probation on each count, concurrent); *United States v. John Delbridge, Jr.*, 24-cr-148-1 (CJN) (24 months of probation on each count, concurrent); *United States v. Johnny Delbridge III*, 24-cr-148-2 (CJN) (24 months of probation on each count, concurrent); *United States v. Joshua Borum*,  24-cr-301 (TNM) (24 months of probation on each count, concurrent).

There are of course outliers. *See e.g., United States v. Frederic Fiol*, 23-cr-196 (RCL) (45 days incarceration on one count, 24 months of probation on second count); *United States v. Cody Tippett*, 23-cr-337 (CRC) (30 days incarceration on one count,

36 months of probation on second count); *United States v. Donald Pearston*, 23-cr-454 (JEB) (10 days incarceration on one count and 9 months of probation on the second count); *United States v. Joshua Parmenter*, 23-cr-404 (JEB) (5 days incarceration on one count and 12 months of probation on the second count); *United States v. Derek Dodder*, 24-cr-74-2 (CJN) (12 months of probation on one count, 14 days incarceration on second count); *United States v. Christopher Keniley* 24-cr-001 (TSC) (10 days incarceration on one count and 12 months of probation on the second count); *United States v. Michael Fournier*, 24-cr-81 (JEB) (30 days incarceration on one count and 12 months of probation on the second count); *United States v. Leah Green*, 24-160 (TSC) (7 days incarceration on one count and 36 months of probation on second count).

In each of the outlier cases, *Fiol, Tippett, Pearston, Dodder, Parmenter, Keniley, Fournier,* and *Green,* it appears the *Little* issue was not addressed as counsel did not raise it in their sentencing memoranda. While it is possible the Court addressed it, there are no transcripts available, and it seems unlikely that the Judges would have raised the issue *sua sponte*. Moreover, in several of the outlier cases, (*Pearston*, *Dodder*, *Parmenter*, *Keniley*, and *Green*) the Court imposed a sentence of incarceration that was short enough to have been imposed as a condition of probation for intermittent confinement, thus not violating the spirit of *Little*.

## IV.    Conclusion

For the reasons stated above, Mr. Chambers respectfully requests that the Court impose a period of probation along with $500 restitution and if the Court believes necessary, an appropriate condition of community service and/or modest fine.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____

MICHELLE M. PETERSON
Chief Assistant Federal Public
Defender
625 Indiana Avenue, N.W., Suite
550
Washington, D.C.  20004
(202) 208-7500
Shelli_Peterson@fd.org